**FILED**

JUL 2 5 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

DIACONU EUFROSINA,

   Plaintiff/Class Agent, Pro Se.

533 East Luray Street

Philadelphia, PA 19120

   215-329-2532

                        TOXIC TORT CLASS ACTION

                                                    JURY
                                                    ACTION

        v.              No. _    Case: 1:07-cv-01358
                                 Assigned To : Sullivan, Emmet G.
                                 Assign. Date : 7/25/2007
                                 Description: PI/Malpractice

The Hon. ROBERT GATES,

        Secretary of Defense

U.S. DEPARTMENT OF DEFENSE

1600 Defense PENTAGON

Washington DC 20301

        and

The Hon. STEVE JOHNSTON,

        Administrator

U.S. ENVIRONMENTAL PROTECTION AGENCY

Ariel Rios Bldg.

1200 Pennsylvania Ave. NW

Washington DC 20460

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DIACONU EUFROSINA,<br>    Paintiff/Class agent, Pro Se. | )<br>)<br>)<br>) | **Civil Action No.** |
| v. | )<br>)<br>) | **TOXIC TORT CLASS ACTION** |
| | ) | |
| The Hon. ROBERT GATES,<br>         Secretary of Defense.<br>U.S. DEPARTMENT OF DEFENSE<br>The Hon. STEVE JOHNSON,<br>         Administrator.<br>U.S. ENVIRONMENTAL PROTECTION AGENCY | )<br>)<br>)<br>)<br>)<br>) | COMPLAINT FOR DAMAGES,<br>INJUNCTIVE, SUMMARY<br>JUDGEMENT AND DECLARATORY<br>RELIEF and OTHER RELIEF<br>AND DEMAND |

Plaintiff/class agent, pro se, on behalf of herself and on the
behalf of all the members of the class described below, makes the
following claims all ready proven by the Commonwealth Of
Pennsylvania Department of Environmental Protection ("PA DEP")
and the liability already admitted by the defendants:

### JURISDICTION AND VENUE

1.  The jurisdiction of this court is based on U.S. Supreme
    Court 01/17/07 decision on WACHOVIA BANK, N.A. v SCHMIDT
    (04-1186) 388 F.3d 414, reversed and remanded, where it has
    decided that "Congress empowered federal district courts to
    adjudicate civil actions between "citizens of different
    States" where the amount in controversy exceeds $ 75,000.
    28 USC 1332(a)(1).... and, since 1958, also "of the State
    where it has its principal place of business". Defendant
    ROBERT GATES, Secretary of Defense, DEPARTMENT OF DEFENSE
    (hereafter referred to as "DoD") and defendant STEVE JOHNSON,

Administrator (hereafter referred to as "EPA") both are
citizens of the Wahington, District Of Columbia.

2.  The jurisdicion of this court is based on 28 USC 1331, 1332
    and 1343 on the grounds that this action presents a federal
    question under the First and Fifth Amendment to the Constitution
    of the United States, and judicially created remedy enunciated
    by the U.S. Supreme Court in BIVENS v. SIX UNKNOWN AGENTS OF
    FEDERAL BUREAU OF NARCOTICS, 403 USC 388, S.Ct. 1999(1971).

3.  This action arises under the:
    a. Toxic Tort 15 USC 2600 et al.
    b. Federal Insecticide, Fungicide and Rodenticide Act of
       1972 (Public Law 92 516) et seq.
    c. Occupational Safety and Health Act, 29 USC 687.

4.  Declaratory Judgement Act, 28 USC 2201 and 2202; and other
    acts as hereinafter more fully appears.

5.  Plaintiff/class agent further invokes this Court's jurisdiction
    with respect to toxic tort claims based on the toxic tort
    law of Commonwealth of Pennsylvania, Commonwealth of Delaware,
    State of New Jersey and the State of Maryland where members
    of the class resided/reside.

6.  The amount of controversy greatly exceeds $ 75,000.

7.  Venue of this action is properly placed in this court
    pursuant the orders/decisions made by the U.S. District Court
    For The Eastern District Of Pennsylvania and by the U.S.
    Court Of Appeals For The Third Circuit in the following
    cases: BLUE v. DLA CLASS ACTION No. 04-2210; GREEN v. ENGLAND

No. 04-4049; DIACONU v. DLA No. 03-3405; DIACONU & BUTLER v.

DLA & EPA, Class Action Toxic Tort No. 98-6533; DIACONU v.

DLA No. 96-0214; ADAMS v. DLA 95-08088; ADDANKI v. DLA

No. 95-0696; DIACONU v. DLA No. 94-7273; HATTENBA v. DLA

No. 93-6620; DAVIS v. DLA No. 93-3242; CUFFEE v. DLA

No. 93-02731; CUFFEE v. DLA No. 93-0268; SPENCE v. DLA

No. 92-3713; BROOKS v. DLA No. 90-5660; BENDER v. DLA

No. 90-0858. In all these cases the two cited Federal courts

had determined that the DoD and not DLA or the Navy was the

defendant and lacked jurisdiction.

8.  On March 2007 DIACONU, plaintiff/class agent received

approval from the U.S. District Court For The Eastern

District Of Pennsylvania to file the instant case in THIS

Court.

### CLASS ACTION ALLEGATIONS

9.  This action is brought by plaintiff/class agent on behalf of

herself and others similarly situated, as a class action

under Fed.R.Civ.Pr. 23.

10. The exact number of the members of the class represented by

the plaintiff/class agent is presently unknown as mostly of

them either died or, like DIACONU, are about to die. It is

believed that the class consists of at least 1,000. members,

which makes joinder of the individual members of the class

impracticable.

11. The class consists of:

a. all past employees (except those excluded) that used to

work for the Defense Personnel Support Center ("DPSC"),

Defense Logistics Agency ("DLA") a DOD field activity

located at 2800 So. 20th. Street, Philadelphia, Pennsylvania

b. The class is further defined as all past DoD/DPSC's

employees whose, at any given time during 01/01/1992 to

10/01/1994 period, work station was in B-13, B-9, B-6,

B-26, W-1, W-2, W-3, W-4, W-5 (demolished in 1992). Except

those excluded, members of the class consists of all

Environmental and Fire Protection Division personnel and

all the security and maintenance shops personnel: carpentry,

electrical, painting, roads & grounds whose daily routine

work in any given day (including weekends) made them to

enter and spent at least 15 minutes per occurence in any

of the buildings cited above.

12. **EXCLUDED FROM THE CLASS** are:

a. ALL DoD's MILITARY PERSONNEL stationed at DPSC, 2800 So.

20th. Street Philadelphia, Pennsylvania, regardless of

their work station's location, rank or title position.

b. ALL CIVILIANS: deputy commanders, directors, deputy

directors, chief divisions, deputy/assistant chief

divisions, chief facility engineering division and its

deputy, supervisors (GS-12 and above, and/or equivalent),

all technical personnel GS-12 and above and/or equivalent,

working in and/or having subordonates working in the

buildings cited in para. # 11 during the 01/01/1972 to

10/01/1998 period

c. EXCLUDED ARE ALL THE PERSONNEL, regardless of the grade or title, working for the Office of Health & Safety, DPSC, who at all relevant times knew about the conditions of DPSC but, in order to protect the management, routinely and with impunity provided investigators, administrative judges during the hearings, to the U.S. Labor Department and auditors misleading and inaccurate informations.

d. EXCLUDED ARE ALL THE PERSONNEL working for the OFFICE OF COUNCEL, DPSC and all the personnel working for the Office Of Human Resources (ex-Personnel Department) DPSC. These employees, with impunity and in total disregard of the laws, suppressed direct evidences and retaliated against employees who questioned the illegal activities that took place at DPSC which lead to the prematurely death of 1,000s of DPSC's employees, even prior of 1998 when the base was completely shot-down.

13. Plaintiff/class agent is also a member of the class and has standing to bring this action because she also worked for DPSC in Philadelphia from 07/01/1990 until 05/05/1995 and also meets the definition of the class as defined in para. # 11.

14. As more fully stated below, there are common questions of the law and fact in this action involving both the rights of the plaintiff and of the each member of the class and the relief sought by the entire class.

15. As more fully stated below, the claims being asserted by the
    plaintiff in this action are typical of the claims of each
    member of the class and the plaintiff/class agent will fairly
    and adequately represents the interest of the class as a
    whole.

16. The class action may also be maintained under Fed.R.Civ.Pr.23(b)
    because:

    a. procecution of separate actions by each member of the
       class would create a risk of inconsistent results arising
       from multiple adjudications, which in turn would establish
       incompatible standards of conduct for defendants, in mod
       particular that at all relevant times the members of the
       class although worked for DPSC in Philadelphia, not all of
       them were residents of Pennsylvania but they were daily
       commuting from New Jersey, Delaware or Maryland.

    b. DoD and EPA has acted in a manner inconsistent with the
       entire class, and therefore it is appropriate to grant
       injunctive and declaratory relief and other relief and
       demands sought in this complaint with respect to the class
       as a whole.

    c. The last, but not the least, the question of the laws and
       facts common to the members of the class predominate over
       any question affecting only individual members of the
       class and a class action is superior to any other available
       method for the fair and efficient adjudication of this
       controversy.

**PARTIES**

17. Plaintiff/class agent, DIACONU EUFROSINA is a 65 year old single female, a naturalized citizen of the United States; she resides at 533 East Luray Street, Philadelphia, PA. 19120. In May 2006 she was diagnosed by the Temple Hospital For Woman, Philadelphia having a cancerous endometriosis. Additional tests showed that cancer has spread to her ovaries, breast and possibly to the right lung. She worked for DoD from 08/26/85 until 05/05/95 when, while in two months sick leave, she was fired by her second line supervisor John Bravo, Director Health Safety & Environment. At the time her employment was terminated DIACONU worked as an Environmental Engineer GS 0819-11 Step 7, a position she never applied for but, it was forced to accept and to relocate to Philadelphia in 08/01/90 from Alameda, California. On 01/03/97, retroactive to 12/95, the U.S. Social Security Administration ("SSA") found DIACONU to be totally and permanently disabled. ✱

---

✱ Using the SSA's finding that she has an irreversible total and permanent neurological disability as a background, in 12/98 DIACONU filed DIACONU & BUTLER v. DLA/DPSC & EPA, TOXIC TORT CLASS ACTION Case Nr. 98-06533 E.D. Pa. (J.Weiner). Ignoring direct evidences, the case was dismissed at the request of the U.S. Attorney's Office Philadelphia. On appeal to the 3rd. Circuit, recognizing the mistakes made by the lower Court, the 3rd. Circuit tried very hard to settle the case. Although DIACONU, BUTLER and the members of the class they all wanted to settle the case, IT WAS THE U.S. ATTORNEY'S OFFICE PHILADELPHIA WHO OPPOSED ANY SETTLEMENT. BUTLER's portion of the case was remanded to the lower Court. BUTLER's case is still open and unresolved. Related to her irreversible total and permanent neurological disability, on 05/07/07 DIACONU was asked to file the CLAIM FOR DAMAGE, INJURY, OR DEATH Std. Form 95 prescribed by U.S. Dept. Of Justice ("DOJ") 28 CFR 14.2 which she did and forwarded the claim for final decision to WILLIAMS J. HAYNES, General Counsel, Office of General Counsel, DoD. Both, DOJ and DoD, are yet to respond to DIACONU's 05/14/07 claim.

In Philadelphia, her work station was at the Defense Personnel
Support Center ("DPSC") located at 2800 So. 20th. Street. At
all relevant times DPSC was owned by DoD and operated by the
Defense Logistics Agency ("DLA"). At the time DIACONU became
a DoD employee (08/26/85) and until 07/01/90 when she was
forced to relocate to Philadelphia, PA. DIACONU was in a
perfect health; she never smoke, drink or used/experimented
with drugs. She run/walked on the treadmill every day at
least 5  miles and used the gym in the base at least four
times a week. Although in 1985 prior of being hired she was
required to submit to an extensive medical evaluation, once
in Philadelphia she was also required to šumit to the same
stringent medical evaluation; this time the evaluation it was
made by the Navy-doctors at the Navy Shipyard Philadelphia,
who gave her a clean bill of health.  The 2006 diagnosis of
having cancer to several organs: (i) is typical to the
gestation time of the carcinogens (chemicals and ultrahazardous
materials) she has been exposed to during the 1990 to 1995
period. (ii) The cancer and other health related problems
resulting from DIACONU's exposure to carcinogens and other
regulated substances, is typical to the health problems all
the members of the class had and/or still have.

18. Defendant The Hon. ROBERT GATES, Secretary of Defense, U.S.
Department of Defense (hereafter addressed only as "DoD"), is
the dully authorized head of all DoD's component and all its
field activities. DPSC as a DoD facility was constructed  in
the early 1900s and additional construction and major site

renovations were completed in the '40s. The site contained
several very large warehouse structures, administrative
buildings and a textile factory that was located in B-9 and
in B-13. DPSC, a civilian field activity, was responsible for
the procurement and distribution of food, medical supplies
and clothing for DoD, including all branches of the armed
forces. Except for the textile products, all other supplies
distributed by DPSC were for the most part manufactured and
stored at other facilities. Until the Textile Factory was
closed by BRAC 1993, all the textile supplies and products
have been manufactured at and have been stored in warehouses
throughout the DPSC facility. Prior to cutting and sewing the
wool into products used by all branches of the U.S. armed
forces, DPSC treated the wool textile through mothicide and
preshrinking processes. To accomplish the wool mothproofing
process DPSC has operated a small scale unlicensed and
unregistered chemical plant where it has successfully
experimented with various cocktails made of several chemical
compounds. e.g. naphtalene, methylebromide, dichlorodiphenyl
trichoroethane ("DDT"), lindane, chlordane, lubricating oil,
trichloroethene ("TCE"). The chemical plant as part of the
mothicide and preshrinking processes (including the use of
DDT) was still active in 1990 when DIACONU was relocated to
DPSC. It chased in the early 1991 when the one of the
preshrinking machine broke, and samples at first collected by
DIACONU and later by the U.S. Army Environmental Hygiene

10

("AEHA") found DDT concentration as high as 385,000 ppm in
the "mixing room". As a result of BRAC 1995 DPSC was ordered
to realign its remaining activities, merged with another DoD
field activity in Philadelphia, and was ordered to literally
vacate the site and by 1998 to relocate to another location
in northeast Philadelphia, the result of which the City Of
Philadelphia would have taken custody of the DPSC's site
(2800 So. 20th. Street). While prior of BRAC 1995 the City
and PA DEP was limited of could do, say or ask for because
DPSC was a DoD field activity, BRAC 1995 forced DoD to prove
that the site is free of any kind of contamination.  All the
tests conducted at the site during 1995 to 1998 through 2000
period indicated that DPSC was a cesspool of pesticides and
other hazardous chemicals. In addition it was confirmed that
the petroleum product plume known to exist under DPSC but
totally ignored by the military and the civilian management
was a product used by DPSC, and it has extended outside the
DPSC's boundaries. All but two buildings were demolished;
what was left went through an extensive and expensive
remedial actions. On 12/10/1999 PA DEP issued an Enforcement
Order against DLA who managed DPSC, against the U.S. Department
of Army (a DoD component activity) who owned the site and
against DPSC. In 2000 DoD appealed the ORDER to the Pennsylvania
Environmental Hearing Board ("EHB") Docket No. 2000-004-MG.
The appeal was denied, the result of which DoD paid to the
City of Pennsylvania and to the Philadelphia Housing Authority
over 100 million dollars in compensation.

That DoD is the right defendant was also confirmed by the decisions issued by the U.S. District Court For The Eastern District Of Pennsylvania ("E.D. Pa.") and upheld by the U.S. Court Of Appeals For The Third Circuit ("3 Circ.") during the 1990 to 2005 period - see also para. # 7.

DoD is a citizen of the Washington, District of Columbia. Established by the U.S. Congress, its business address is 1600 Defense PENTAGON, Washington DC 20301.

At all relevant times DoD was obligated to comply with all the existing environmental laws and regulations and had a fiduciary duty to protect the health and the safety of his employees. DPSC was not a training ground for the uniformed personnel, nor was a fuel, weapons, ordinance/biological or nuclear weapons storage facility where someone might expect hazardous conditions or to invoque national security status.

18. Defendant The Hon. STEVE JOHNSON, Administrator, U.S. Environmental Protection Agency (hereafter addressed only as the "EPA"). EPA, a citizen of the Washington, District Of Columbia was established by the U.S. Congress and its business address is Ariel Rios Bldg., 1200 Pennsylvania Ave., NW, Washington DC 20460. At all relevant times EPA had the authority to regulate, the authority and the obligation to inspect DPSC and to issue notice of violations ("NOV"). Such inspections and NOVs would have not interfere neither with DPSC's mission nor with DoD's own environmental regulations and directives, or with any other law enacted by the U.S.

Congress for DoD. During the 1990 to 1995 period numerous

calls for help made by DIACONU and by other members of the

class were viewed by EPA as being made by disgruntled

employees; they were adviced to contact DPSC's Environmental

Health & Safety Office. If wasn't for PA DEP, DPSC's

ex-employees would have never learned about the extend to

which DoD allowed DPSC's military and the civilian management

to lied to them. For allowing and relying on DoD's own and

exclusive monitoring its complaince with the federally

mandate environmental laws; for never conducting a comprehensive

inspection at the site (2800 South 20th. Street) and for

ignoring their calls; for not even considering to put DPSC on

the National Priority List ("NPL"), EPA is equally and fully

liable for the deaths of 1000s of DoD/DPSC's employees; EPA

is liable for the members of the class's numerous and various

irreversible health damages. EPA IS ALSO LIABLE FOR DIACONU's

and other members of the class type of cancer.

### FIRST CLAIM

20. Located next to I-76 and SUNOCO Refineries, DoD failed to

protect its employees working at DPSC from the air pollution

migrating into its buildings through the A/C units; none of

its units had filters to trap and to prevent any particular

matters, vapors of benzine or carbon monoxide, etc. to enter

into the buildings. In fact, DoD's military and the civilian

management has used the I-76 and the SUNOCO to supress any

claim of health injury that could have been traced to the
employee's continued 8 hours exposure to fumes from the
exhaust pipes, carbon monoxide, vapors of benzine and so on.
DoD knew or should have known that the unfiltered A/C's
intake air could cause respiratory problems to its employees
due to the site's close proximity to the I-76 and to the
SUNOCO Refineries.

### SECOND CLAIM

21. Pursuant PA DEP's 12/10/1999 Enforcement Order, issued to
DoD, at all relevant times DoD knowingly and with impunity
has exposed DIACONU and the members of the class to "industrial
waste" a "substance ... resulting in pollution". Extensive
subsurface investigations performed on behalf of DPSC after
1995 and provided to PA DEP have descovered and deliniated
the area of a non-aqueous phase liquid ("NAPL") plume and
hydrocarbon contamination found in the soil and in the
combined sewer (storm water and sanitary) beneath the DPSC
site and extending to adjacent properties to Passyunk
Homes. The NAPL plume and the associated subsurface hydrocarbon
contamination constitutes "industrial waste" and a "substance
... resulting in pollution" as those terms are used on the
Pennsylvania Clean Streams Law, 35 PS 691.301 et seq.
Soil, groundwater and NAPL samples have revealed significant
quantities of benzene and other materials such as light
naphta all of which are considered carcinogens. PA DEP has

14

determined that DoD was liable for the NAPL plume, its
groundwater, the soil and the (combined) sewer's contamination
and was ordered to maintain and operate the NAPL removal
system in place at the Passyunk Homes and at the DPSC
facility. To complete the NAPL's remedial action is estimated
to take another 20 to 25 years.

### THIRD CLAIM

22.  Having a combined sewer/storm drain system, despite numerous
complaints made by its employees, DPSC's military and
civilian management refused to conduct a base wide odor
abatement investigation which would have included the sewer
air collection and filtration system. THEREFORE, at all
relevant times DoD has exposed DIACONU and the members of
the class to raw and unfiltered sewage waste combined with
petroleum vapors that entered the sewer system from the NAPL
plume, in mod particular during the inclement weather when
the groundwater level was rising. EPA is equally liable for
this condition on the ground that DPSC's combined sewer
system eventually reached the Schuylkill River and/or
Delaware River; both rivers were and still are protected by
the Federal Clean Water Act, 33 USCA 1323 at seq. Members of
the class health injuries such as cancer, as well as
leukemia, blood, damages to reproduction system, kidney, CNS
and respiratory system, all are known to occure when exposed
to these conditions. For the purpose of this complaint,

DIACONU and the members of the class have been exposed to the
raw and unfiltered sewage waste in continue bases during the
9 hours (8 working hours plus one hour lunch) per day, at
least five days per week.

## FOURTH CLAIM

23. During the 1990 to 1995 period DIACONU and during the 1972 to
1995 period the members of the class with impunity have been
exposed to pesticides known to cause cancers. The ROY F.
WESTON, INC. of West Chester, Pennsylvania stated in its
02/1995 Post-Remediation Clearance Testing Report For
Pesticide Contamination in B-9 & B-13 at DPSC Contract No.
DACA 61-93-D-005 that "...The DPSC BRAC Cleanup Team completed
an EA of these buildings... The DPSC BRAC Cleanup Team
concluded that pesticides contamination detected in bulk dust
throughout these buildings posed unacceptable risks to future
workers, and that remediation was required...", YET requests
made by the members of the class ever since 1972 to have
these buildings tested were ignored. DoD viewed these
requests as coming from disgruntled employees. At all
relevant times EPA knew or should have known that in B-9/B-13
DoD was operating an unlicensed and unregistered chemical
plant. EPA knew or should have known that at the site DPSC
manufactured and used in its pre-shrinking and sponging
process a new ultrahazardous chemical liquid which in turn
converted the new wool yardage into a hazardous material and
so were the new textile products such as the clothings,

blankets, tents and so on. In violation to the Commerce Laws
some of the treated wool yardages have been shipped to
various contractors throughout the country.

### FIFTH CLAIM

24. Not even after the RI/FS and health risk assessment have been
completed, the result of which all but two buildings have
been demolished because either these buildings were not cost
effective to be remediated or they were so contaminated that
couldn't be remediated, DoD still didn't formally informed
its ex-employees about the hazardous working condition they
have been exposed to, nor did DoD or the EPA informed the
U.S. Department of Labor. Despite the fact that at the time
the Textile Factory actually closed (effective 10/01/1993)
the Agency For Toxic Substances and Disease Registry (ATSDR)
in Atlanta developed already tests for determining exposure
to DDT/DDD/DDE and other chlorinated type of pesticides, or
to PCB. DoD never informed its ex-employees about these
tests.

### SIXTH CLAIM

25. DoD in concert with the EPA and supported by the U.S.
Attorney's Office Philadelphia, and by the E.D. Pa. and the
3rd. Circuit managed to convert toxic/health issues into
employment relation issues. Most of those who filed workers
compensation claims not only that did not receive any support
from DoD, but DoD provided false and misleading informations

to the U.S. Department of Labor with the clear intent to have
the employee's claim denied. Those employees who challenged
the claim's denial or the false informations provided by DPSC
were retaliated against, labeled a "disgruntled employee" and
dealt with in the most harsh ways. e.g. Sam Addanky, PhD,
Industrial Hygienist GS 12, had his employment terminated
just because he challenged his first line supervisor, the
Director of Health & Safety, DPSC on the issue of employees
being exposed to friable asbestos or like DIACONU who was
fired for ignoring her second line supervisor (the same
Director of Health & Safety who fired Sam Addanki) order not
to filed on 04/1995 her workers compensation claim. In
retaliation for defying the order, DPSC refused to process
DIACONU's workers compensation claim for injury. Yet, those
who supported the DPSC's military and civilian management
either were promoted to position for which they couldn't
possibly qualified (e.g. Environmental Health Coordinator, a
GS 12 position or Industrial Hygienist GS 12) or let go in a
civil service disability retirement (e.g. Mike Stinski) or
have their government issued credit cards paid in full by
DPSC even though they were used for personal use (clothings,
beauty parlor, etc.) and the employees no longer worked for
DPSC (e.g. Justina Wesley, ex-Chief Environmental and Fire
Protection Divison (last known employment being with U.S.
Army Corps Of Engineers, Baltimore, Md.), or Phillip Mackey,
acting Chief after Justina Wesley left DPSC).

## SEVENTH CLAIM

26. From the legal documents generated by DoD to support the
transfer of the facility once occupied by DPSC to the City of
Philadelphia it is evident that at all relevant times DoD
exposed his employees to ultrahazardous conditions yet, it
never informed neither the U.S. Department of Labor nor the
Department of Public Health (State and the City) in whose
jurisdiction the members of the class belonged to about this
exposure. As stated before, at all relevant times some of the
members of the class were commuting to work in Philadelphia
from the State of New Jersey, Delaware and even from Marryland
in addition to those employees residing in the City of
Philadelphia and its surroundings. While pathways of exposure
may appear to be by inhalation, there was also by ingestion
dust/particle matters/vapors of benzine etc. settled on the
food and water and by dermal exposure (in mod particular
those working in the Factory).
DoD/DPSC's own BRAC CLEANUP TEAM using the toxicity assessment
of each chemical/substance (finally admitting to have been
**used in the preshrinking/mothicide process until 1992)**
determined that the issue was no longer if the toxicity was
high enough to cause cancer or other health injuries to the
prospective new occupants because they already knew that it
will but, the question was if there are means to remediate
those buildings. The answer was NO so, they opted for
demolishing all but two buildings.

19

Although DoD had on board an ENVIRONMENTAL HEALTH COORDINATOR and an "army" of industrial hygienists; although DoD & EPA knew that its employees's health could have been monitored using ATSDR's recommended lab testing and thus preventing their deaths, it has never conducted or recommended such tests because that it would have been an admission of unreported and illegal activity and exposure.

The instant case raises two questions:

1. IF DoD WAS FOUND LIABLE AND IT HAS ADMITTED TOXIC TORT LIABILITY TO THE CITY OF PHILADELPHIA AND TO THE PHILADELPHIA HOUSING AUTHORITY BY PAYING THEM OFF OVER 100 MILLION DOLLARS, DOES THE TOXIC TORT LIABILITY UNDER 15 USC 2600 et seq EXTENDS AND TO ITS EXEMPLOYEES ?

2. DOES THE TOXIC TORT LIABILITY EXTENDS AND TO THE EPA FOR REFUSING TO MONITOR A CIVILIAN DoD FACILITY KNOWN SINCE 1972 TO ENGAGE IN AN ILLEGAL ACTIVITY ?

**WHEREFORE,** plaintiff/class agent and the members of the class respectfully pray for a judgement against defendants DoD and EPA as follows:

   a. Plaintiff/class agent and the members of the class be awarded punitive damages for pains and suffering, and other awards as the Court may find appropriate.

   b. DoD and EPA to pay the plaintiff/class agent and to each member of the class any and all medical expense associated with the cancer and other health injuries caused by DoD &

20

EPA's negligence.

c. DoD & EPA will pay for any cost associated with this case which includes but is not limitted to: application fee, service of the complaint, <u>lawyer to represent the plaintiff and the members of the class</u>, depositions, hard copy transcripts of the depositions, court proceedings etc.

d. The case be decided by a jury pannel. As most of the members of the class are already dead and the plaintiff has been already senteced to death (by having cancer to several organs) let the jury decide how much the innocent people's life is worth it ?

e. No out of Court settlement should be permitted unless is a settlement "en block"; that is, it will address each member of the class.

Respectfully submitted,

EUFROSINA DIACONU,
   Plaintiff/Class Agent, Pro Se.
533 East Luray Street
Philadelphia, PA 19120
(215) 329-2532

7-24-07

21

07-1358
EGS

JS-44
(Rev.1/05 DC)

## I. (a) PLAINTIFFS

DIACONU EUFROSINA

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88815
(EXCEPT IN U.S. PLAINTIFF CASES)
Philadelphia, Pennsylvania
Y/no SE NY

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
533 EAST Larry STREET
N/A at this time. PRO SE
Philadelphia, Pa. 19120 /215329 253 2

## DEFENDANTS

The Hon. ROBERT GATES,
Secretary of Defense, ETAL

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Washington
(IN U.S. PLAINTIFF CASES ONLY)  DC
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

JURY ACTION

A1
Case: 1:07-cv-01358
Assigned To : Sullivan, Emmet G.
Assign. Date : 7/25/2007
Description: PI/Malpractice

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government
Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government
Defendant

☐ 4 Diversity
(Indicate Citizenship of Parties
in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

PA XI X

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ☐ A. Antitrust

☐ 410 Antitrust

### ☒ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ☐ C. Administrative Agency Review

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW 405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ☐ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

## ☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ Multi district Litigation    ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

see venue statement    28 USC 1346

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ☒ ACTION UNDER F.R.C.P. 23    **DEMAND $** over $ 75,000.    Check YES only if demanded in complaint    **JURY DEMAND:** ☒ YES    ☐ NO

**VIII. RELATED CASE(S) IF ANY** Nif    (See instruction)    ☐ YES ☒ NO    If yes, please complete related case form.

DATE 7-24-07    SIGNATURE OF ATTORNEY OF RECORD *Anthony Spcck*

25

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II. Plaintiff & members of the class citizens of Pennsylvania, NJ, DE, Md.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd